UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**TODD A STUBBS**,

Debtor.

Case No. **07-61165-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 6th day of December, 2007.

In this Chapter 13 bankruptcy, after due notice, a hearing was held December 4, 2007, in Butte on confirmation of Debtor's amended Chapter 13 Plan dated November 28, 2007. The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana, appeared at the hearing in opposition to confirmation of Debtor's amended Chapter 13 plan, while Debtors' attorney of record, R. Clifton Caughron of Helena, Montana, appeared in support of confirmation of Debtor's amended Chapter 13 plan. Debtor Todd A. Stubbs ("Todd") testified in support of confirmation. No exhibits were offered into evidence. This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

BACKGROUND

The few facts in this case are relatively straight forward. Todd is married and has five children ages 12, 16, 18, 19 and 21. Todd's two older children are in college and the 18-year old is apparently living with his grandparents in Great Falls and is finishing his senior year of high school. Todd's two youngest children live with Todd and his spouse in Bozeman. The youngest

child is a 7th grader and the 16-year old is a senior in high school.

Sometime prior to filing his bankruptcy petition on October 7, 2007, Todd and his family lived in Great Falls in a 3,800 square foot home that had 4 bedrooms and 2½ bathrooms. Todd's payment on the home in Great Falls was $1,550.00 per month, which amount included taxes and insurance. According to Todd's amended Chapter 13 Plan, Todd proposes to surrender the home in Great Falls to Countrywide Home Lending. Todd, his spouse and their two youngest children now live in Bozeman in a rented home that has 3 bedrooms and 2 bathrooms. Todd's monthly rent for the 2,000 square foot home is $1,200.00. Todd is employed in Bozeman as an attorney and Todd's spouse is employed by the Belgrade public schools.

On his Amended Form 22C filed December 3, 2007, Todd checked the boxes on the top of the first page indicating that his applicable commitment period is 5 years and that his disposable income is determined under 11 U.S.C. § 1325(b)(3). Todd reports his and his spouse's combined "current monthly income for § 1325(b)(3)" as $7,666.68. At Part III "Application of § 1325(b)(3) for Determining Disposable Income", Todd discloses at Line 21 that the annualized current monthly income of $92,000.16 exceeds the applicable median family income for a family of seven in the amount $78,138.00 as determined at www.usdoj.gov/ust. After calculating the allowable deductions in Part IV, Todd's Form 22C reflects on line 58 monthly disposable income under § 1325(b)(2) of $684.36. On line 25B of Form 22C, Todd has taken the allowed local standard deduction of $1,071.00 for "housing and utilities; mortgage/rent expense." On line 26, Todd has taken an additional housing and utility adjustment of $129.00 for excess rent.

APPLICABLE LAW

The Trustee's one remaining objection to confirmation of Debtor's amended Chapter 13 Plan is that Todd is failing to commit 100% of his disposable income to his amended Chapter 13 Plan as required by 11 U.S.C. § 1325(b) because Todd's "excess rent" deduction of $129.00 is not a special circumstance that should be allowed as a housing and utility adjustment. It is well-established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added). *See also Ho. V. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002) (under § 1325(a)(3), the debtor has the burden of proving good faith).

As this Court has discussed in prior cases, the disposable income test of § 1325(b) underwent substantial revision in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"). BAPCPA was signed into law on April 20, 2005, and with certain exceptions, is applicable to cases commenced after October 16, 2005. The instant bankruptcy case was commenced on October 7, 2007, and is thus clearly governed by the Bankruptcy Code, as amended by BAPCPA.

BAPCPA substantially modified the disposable income test of § 1325(b) in the following manner: (1) disposable income [current monthly income] is determined by the debtor's average monthly income received within the six-month period ending on the last day of the calendar month immediately preceding the date of the commencement of bankruptcy petition (*see* §§

1325(b)(2) and 101(10A)); (2) for debtors with income above the applicable state's median income, amounts reasonably necessary to be expended are determined as the debtor's applicable monthly expense amounts specified under the IRS National and Local Standards and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses for the area in which the debtor resides on the date of filing (*see* §§ 1325(b)(3) and 707(b)(2)(A) and (B)); and (3) projected disposable income, multiplied by the applicable commitment period is the amount to be paid to unsecured creditors, §§ 1325(b)(1)(B) and 1325(b)(4)(B).

Congress defined the term "current monthly income" ("CMI"), as set forth in § 1325(b)(2) at § 101(10A) as the average monthly income from all sources, with some exceptions, that the debtor receives during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of debtor's bankruptcy case. CMI excludes Social Security benefits or payments to victims of war crimes, of crimes against humanity or terrorism, and in the context of a chapter 13 bankruptcy (*see* § 101(10A)(B)), also excludes alimony, child support, foster care, and child disability payments (§ 1325(b)(2)). CMI is calculated by having all debtors complete lines 1-23 of Form 22C, with the result being listed on line 21 as the debtor's "[a]nnualized current monthly income for § 1325(b)(3)." The term "disposable income" is defined at § 1325(b)(2) and is determined differently depending on whether the debtor's income is above or below the applicable median family income as determined by the debtor's place of residence and household size. If a debtor's annualized current monthly income, as set forth on Line 21 of Form 22C, is greater than the applicable state's median income for a household of the same size, reasonably necessary expenses are calculated using the "Means Test" of § 707(b)(2)(A) and (B). However, if a debtor's annualized

4

current monthly income is less than the state's applicable median income, the debtor is finished with Form 22C and proceeds to list income and expenses on Schedules I and J.

The instant case focuses on one specific category of current expenditures, i.e., housing. The following language of § 1325(b)(2) plainly states its intent: "For purposes of this subsection, 'disposable income' means ...." To understand the scope of the words "this subsection" at the beginning of § 1325(b)(2), reference is simply made to § 1325(a) which begins "Except as provided in *subsection (b)*." (Italics added). In order to give effect to all the pertinent statutory language, this Court reads "this subsection" in § 1325(b)(2) to mean all of subsection 1325(b), both § 1325(b)(1)(B) and § 1325(b)(2), and thus "disposable income" is defined at § 1325(b)(2) for purposes of determining "projected disposable income" under § 1325(b)(1)(B) to decide the disposable income test. *See, e.g., In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006) ("If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."). This Court's construction gives effect to "disposable income" in both §1325(b)(1)(B) and § 1325(b)(2) in the manner which avoids rendering one superfluous. *Connecticut National Bank v. Germain*, 503 U.S. at 252-54, 112 S.Ct. at 1149; *Rake v. Wade,* 508 U.S. at 471-72, 113 S.Ct. at 2192.

As previously mentioned, § 1325(b)(3) imposes what a leading commentator describes as "[p]erhaps the most dramatic changes in the disposable income test" by application of the § 707(b) means test expense calculations. 8 COLLIER ON BANKRUPTCY ¶ 1325.08[5][c][i] (15th ed. 2006). Section 1325(b)(3) provides:

> Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than –

5

\* \* \*

>(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

The Trustee and Todd agree that Todd is an above-median income debtor. COLLIER explains:

>New section 1325(b)(3) provides that for debtors with current monthly income above the applicable state median income for their household size, reasonably necessary expenses are to be calculated using the means test formula in section 707(b)(2)(A) and (B) in order to determine payments to unsecured creditors.

COLLIERS, ¶ 1325.08[5][c][i].

*In re Barr*, 341 B.R. 181, 185 (Bankr.M.D.N.C. 2006), explains: "The use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." The court found the language of § 1325(b)(3) unambiguous and enforced it according to its terms requiring that the expenses of above-median income debtors be determined under § 707(b)(2)(A) and (B). *Id.*, citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("When the language of a statute is plain, the sole function of the courts is to enforce the statute according to its terms unless the disposition required by the text is absurd"); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). In an earlier reported decision, this Court concurred with *Barr* and *Hardacre* and held that the expenses of above-median debtors' must be determined in accordance

with the mechanical "means test" set forth in § 707(b).  *In re Tranmer*, 355 B.R. 234 (Bankr. D. Mont. 2006).

As previously mentioned, the Trustee and Todd agree that Todd's income is above Montana's median income for a family of seven.  Thus, Todd's disposable income is, by statute, determined by Form 22C and not Todd's Schedules I and J.  In addition, Todd does not dispute this Court's application of the mechanical test, but instead argues that the overall cost of living in Gallatin County and in particular, Bozeman, is a special circumstance that warrants consideration of additional expenses under § 707(b)(2)(B), which reads:

> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--
>
> > (I) documentation for such expense or adjustment to income; and
> >
> > (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

The above-quoted subsection allows debtors to rebut the presumption of abuse "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative," § 707(b)(2)(B)(i), provided the presumption of abuse is rebutted if the additional expenses cause

the product of the debtor's current monthly income when multiplied by 60 to be less than the distinct trigger points of § 707(b)(2)(B)(iv). This subsection is applicable in determining amounts reasonably necessary to be expended by the plain language of § 1325(b)(3), and so the Court will apply that test to Todd's $129.00 adjustment for housing.

In *In re Tuss*, 360 B.R. 684 (Bankr. D.Mont. 2007), this Court declined to adopt the separate and parallel analysis described in *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006), where the court presumed the number from Form B22C is the debtor's "'projected disposable income' unless the debtor can show that a substantial change in circumstances has occurred such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." The court in *Jass* acknowledged that § 707(b)(2)(B) allows a debtor to rebut the presumption of abuse where the debtor can demonstrate special circumstances, which the court described as "similar to the Court's inquiry into whether a substantial change in circumstances exists." *Jass*, 340 B.R. at 418. The court also stated that it would look to the analysis required by § 707(b)(2)(B) for guidance whether a debtor has met his or her burden to show a substantial change in circumstances, and that a debtor attempting to meet that burden should present documentation similar to that required by § 707(b)(2)(B). As noted in *Tuss*, the Court found no statutory authorization for the *Jass* court's "substantial change in circumstances" exception to the means test, and declined to adopt that separate test.

In considering special circumstances, this Court looks directly to § 707(b)(2)(B), as specifically authorized by § 1325(b)(3), requiring itemized documentation of expenses and a detailed explanation of the "special circumstances" that justify the additional expenses for which there is no reasonable alternative. *In re Demonica*, 345 B.R. 895, 903 (Bankr. E.D. Ill 2006).

After much consideration, the Court concludes that Todd's evidence of special circumstances satisfies § 707(b)(2)(B).

In reaching this decision, the Court finds that Todd has appropriately itemized the expense; namely, the $129.00 additional rent that he pays per month above the IRS standard. Second, while Todd did not document the adjustment, such as by providing a copy of his lease agreement, it does not appear that the Trustee disputes that Todd pays rent of $1,200.00 per month. Todd did testify as to existing rents in the Bozeman area. Finally, the Court finds that although no evidence was presented as to whether Todd could find a suitable apartment versus a home for $1,071.00 per month, Todd's inability to find a suitable home to rent for less than $1,200.00 is the type of special circumstance contemplated by § 707(b)(2)(A) in that it appears from Todd's testimony that the IRS standards do not accurately depict the cost of living in either Bozeman or Gallatin County. The Court further considered the travel expense that would be required if the Debtor and his spouse both traveled to work from outside the Bozeman area, which would offset the increased rent expense. Therefore, consistent with this Memorandum,

IT IS ORDERED that the Trustee's objection to confirmation of Todd's amended Chapter13 Plan is OVERRULED; and the Clerk of Court shall enter a separate Order confirming Todd's amended Chapter 13 Plan.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

9